**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN CRUZ MENDEZ,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | ) Case No. CV 13-9227-JPR<br>)<br>)<br>) **MEMORANDUM OPINION AND ORDER**<br>) **AFFIRMING COMMISSIONER**<br>)<br>)<br>)<br>)<br>)<br>) |

**I.　PROCEEDINGS**

　　Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed December 4, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

**II.  BACKGROUND**

Plaintiff was born on April 1, 1958.  (Administrative Record ("AR") 231.)  He completed third grade and worked as a construction laborer.  (AR 275.)

On November 14 and 17, 2011, Plaintiff submitted applications for DIB and SSI, respectively, alleging that he had been unable to work since November 11, 2009, because of diabetes, "pain neuropathy," depression, insomnia, and back and neck problems.  (AR 231, 233, 274.)  After his applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 162.)  A hearing was held on April 3, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert and Plaintiff's case manager at a mental-health clinic. (AR 64-93.)  In a written decision issued April 10, 2013, the ALJ found Plaintiff not disabled.  (AR 39-49.)  On October 16, 2013, the Appeals Council denied Plaintiff's request for review.  (AR 4.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4), 416.920(a)(4); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

      B.    The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 11, 2009, the alleged onset date.  (AR 41.)  At step two, she concluded that Plaintiff had severe impairments of diabetes mellitus, neuropathy in the legs and feet, and depression.  (Id.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 42.)  At step four, she found that Plaintiff had the RFC to perform medium work with additional restrictions.  (AR 43.)  His specific additional mental restrictions were that he could perform "simple tasks," "should avoid public contact," and should engage in "no more than occasional interaction with co-workers and supervisors."  (Id.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a construction laborer.  (AR 47.)  At step five, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (AR 48.)  Accordingly, she found him not disabled.  (AR 49.)

**V.   DISCUSSION**

<u>The ALJ Properly Considered the Examining Psychiatrist's Findings and Opinions</u>

Plaintiff contends that the ALJ erred in assessing the findings and opinions of Dr. William Goldsmith, the consultative examining psychiatrist. (J. Stip. at 4-9, 12-16.) For the reasons discussed below, remand is not warranted.

1.   <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. <u>Lester</u>, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  <u>Id.</u>

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  <u>Smolen</u>, 80 F.3d at 1285.  If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  §§ 404.1527(c)(2), 416.927(c)(2).  If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of

6

specialization, and other factors. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id. The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).

### 2. Relevant background

In October 2011, Plaintiff complained of depression during a visit to the emergency room for diabetes-related symptoms. (AR 346-50.) He was referred to a mental-health center (AR 407-08, 604), where he was treated by Dr. Ronen Alon, a psychiatrist, from November 29, 2011, to February 26, 2013 (AR 402-20, 554, 573-89).

On March 12, 2012, Dr. William Goldsmith, a board-certified psychiatrist, performed a consultative psychiatric examination of Plaintiff. (AR 367.) Plaintiff denied that he received regular psychiatric care, although at the time he was enrolled in the mental-health clinic. (Id.) Although he was "shabbily dressed" and a "little unkempt," he was cooperative and spoke "good accented English." (Id.) Dr. Goldsmith noted that "[b]ut for" his diabetes-related symptoms, including neuropathy, weakness,

and numbness in his legs, Plaintiff "would be employed, although he is functionally illiterate." (Id.)

Dr. Goldsmith noted that Plaintiff's affect was "blunted" and that he was "tearful" when he discussed his loneliness and separation from his family. (AR 369.) His mood was dysphoric, but his speech was clear and coherent. (Id.) His memory was "intact," and he was able to concentrate "adequately" during the interview. (Id.) His thought content was "without gross delusional thinking," and he did not have any suicidal or homicidal ideation. (Id.) His general fund of knowledge was good, and his ability to abstract was "intact." (AR 369-70.)

In Dr. Goldsmith's opinion, Plaintiff was "a little impaired" in his ability to understand, remember, and carry out simple one- or two-step job instructions. (AR 370.) He was "moderately impaired" in his ability to follow detailed and complex instructions and to relate to and interact with supervisors, coworkers, and the public. (Id.) He was "severely impaired" in his ability to associate with day-to-day work activity, "including attendance and safety," and to adapt to the stresses common to a normal work environment. (AR 371.) On the other hand, Plaintiff's ability to maintain regular attendance in the workplace was "intact," as was his ability to perform work activities "on a consistent basis" and without special supervision. (Id.) Plaintiff's prognosis was "fair" and "depend[ed] on improvement in his physical and social condition." (Id.)

In addition to her RFC finding of medium work, the ALJ found that Plaintiff could perform simple tasks but should engage in

"no more than occasional" interaction with coworkers and supervisors and should avoid public contact. (AR 43.) She also stated as part of the RFC that Plaintiff should avoid uneven terrain and ladders. (Id.) She gave "significant weight" to Dr. Goldsmith's findings and opinions — specifically noting his "severe" findings (AR 46) — because they were "consistent with and supported by the substantial medical evidence of record." (AR 47.)

### 3. Analysis

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Goldsmith's opinion that he was "severely impaired" in his ability to associate with day-to-day work activity and adapt to stresses of the work environment. (J. Stip. at 6, 13.) He bases his argument on the premise that the ALJ, in failing to account for Dr. Goldsmith's "severely impaired" statements in her RFC determination, effectively "rejected" them and was therefore required to give specific and legitimate reasons for doing so. (Id. at 6.)

But the ALJ did not reject those statements so much as resolve conflicts within Dr. Goldsmith's report. Although Dr. Goldsmith opined that Plaintiff was "severely impaired" in his ability to associate with day-to-day work activity, "including attendance and safety," and to adapt to work stresses, he also assessed as "intact" Plaintiff's ability to "maintain regular attendance" and "perform work activities on a consistent basis" and "without special or additional supervision." (AR 371.) This apparent conflict or ambiguity was for the ALJ to resolve. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir.

1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within treating psychiatrist's and examining psychologist's reports).

    Indeed, the ALJ gave "significant weight" to Dr. Goldsmith's report — though not great weight, indicating that she did not accept all of it — because it was consistent with the medical evidence documented by Dr. Alon from November 2011 to February 2013, which showed that Plaintiff was "stable on medications, with good response to treatment and no complaints of physical or mental health symptoms." (AR 47; see, e.g., AR 573-88 (Dr. Alon noting from Jan. 9, 2012, to Feb. 26, 2013, that Plaintiff reported, "I am doing fine," was "stable on meds," and had "good" response to treatment).) She incorporated Dr. Goldsmith's other functional assessments into her RFC determination — that Plaintiff was "moderately impaired" in his ability to carry out detailed instructions and to interact with the public (AR 370) — finding that Plaintiff could perform simple tasks but was limited to "no more than occasional" interaction with coworkers and supervisors and should avoid public contact (AR 43). She also assessed some safety limitations, stating that Plaintiff should avoid uneven terrain and ladders, thereby taking into account Dr. Goldsmith's findings in that regard. (Id.) She therefore properly determined the weight to give to Dr. Goldsmith's opinion based on the amount of evidence supporting it, see §§ 404.1527(c)(3), 416.927(c)(3), and its consistency with the record as a whole, see §§ 404.1527(c)(4), 416.927(c)(4). Accordingly, she properly assessed Dr. Goldsmith's findings and

opinions.[2] Plaintiff is not entitled to remand on this ground.

## VI. CONCLUSION

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

---

[2] To the extent the ALJ "rejected" certain statements within Dr. Goldsmith's report, she properly did so because they were based on the subjective complaints of Plaintiff, whom she found not credible. (See AR 46-47); cf. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (ALJ need not recite "magic words" to reject treating physician's opinion; court may draw "specific and legitimate inferences" from ALJ's opinion). Plaintiff does not challenge the ALJ's credibility determination; indeed, he acknowledges that she gave clear and convincing reasons for discounting his credibility, including concerning his depression and its effects. (J. Stip. at 13; see also AR 46-47.) Because Dr. Goldsmith relied on Plaintiff's subjective complaints in reaching his conclusions (see, e.g., AR 367 (noting that Plaintiff was "source of information" for evaluation)), the ALJ was entitled to disregard those of his conclusions that she determined were not supported by other evidence in the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (because record supported ALJ's discounting of claimant's credibility, ALJ "was free to disregard [examining physician's] opinion, which was premised on [claimant's] subjective complaints"). Thus, to the extent the ALJ rejected portions of Dr. Goldsmith's opinion, she did so for specific and legitimate reasons.

[3] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 7, 2015         _____/s/ Jean Rosenbluth_____
                             JEAN ROSENBLUTH
                             U.S. Magistrate Judge